the next case United States v. Sobers. Good morning, Your Honors. May it please the Court, Allegra Glashauser representing Mr. Sobers. Your Honors, on a Monday afternoon, Brent Sobers walked into the subway station wearing a backpack and swiped a student MetroCard. Three officers surrounded him, taking him to an enclosed area of the station. Student MetroCard? I mean, if I wave a card, and I'm not a student, have I waved my student MetroCard? Have you swiped it? If he's not a student, you see, and therefore, it can't really be his student MetroCard, can it? It's not his student MetroCard. He swiped a student MetroCard. The officers didn't know that he wasn't a student, however, Your Honor. All they had was a hunch that he looked a little older. Well, but they did have reasonable suspicion. Come on now. A 24-year-old-looking person using a student card, I mean, is that your argument or is your argument about when they stopped and what they did then? It's both, Your Honor. So a student MetroCard can be valid up to people who are 22 years old. The officers here pointed to no facts about why they believed that Mr. Sobers... They did. They said he looked both ways as though he was about to do an illegal thing. When I go in the subway, I look at the slot to make sure I'm putting the card in. I don't look around to see whether somebody is watching me. That's not what they say, Your Honor. They say the only suspicious thing was swiping the MetroCard. They say he looked around. They definitely don't say they found that suspicious. They say the opposite, and they pointed to no facts. They said it was not suspicious to look around before you... The officer said the only suspicious thing was using the card. I believe it's transcript size A36. That was the only suspicious thing. And they didn't say, importantly, anything objective about what about this person made him look a little older than a typical student. Let's get to the point that is the principal argument about whether, under these circumstances, they had a right to check for the gun in the pack and whether, if they didn't, whether this was automatically discoverable. I mean, ultimately, those were the things that troubled Judge Glasser below and on which he focused. So let's get to them. Yes, Your Honor. There was no reason for the officers... They had no valid reason to search the backpack once Mr. Sobers had been stopped by three officers, handcuffed, and the backpack was removed. The officers specifically testified, they had... Or the one officer that offered testimony on this point, that they had... He had no reason to think Mr. Sobers was dangerous. None. No concern. They also had no reason to think there was any evidence in the backpack. And the Supreme Court has counseled that the scope of the search must be limited to a legitimate purpose. So there's no legitimate purpose here and the backpack is also outside of the area that would be part of the legitimate scope of the search. I believe that there's an alternative ground here, which is that... Which is that because he was a transit recidivist, he was going to be arrested. If he's going to be arrested, he's going to the station house. If he's going to the station house, they're going to... It's inevitable discovery. Well, it's the government's burden to show inevitable discovery, which they haven't done here. We know that he was... Well, if he's a transit recidivist, he's not going to get a ticket, right? Well, that's not true, Your Honor. He could get a desk appearance ticket. The facts as far as what his status were are a little limited, as Judge Glasser did not allow counsel to explore the transit recidivist question. But even if he was a transit recidivist, once he's taken to the precinct, the second officer testifies that generally people are given desk appearance tickets in this instance and allowed to return home rather than proceed with the formal arrest process. The government didn't introduce any facts about any inventory process that might apply in that circumstance. And it's not our burden. It is the government's burden to show inevitability, which means there is no... You're saying this is like the Griffith case, that we should send it back to see if there... To have the government come in and show whether there is a practice of looking into backpacks or things when we are inventorying. Because if there were such a practice, and that practice was not manifestly improper, then they would have found a gun. But it's up to them to show that there is such a practice. Is that your argument? It is up to them, but they don't get a second chance to do that now. If they didn't show it... The court found that there were established and standardized procedures. Was there a basis for that finding? No, Your Honor, not with respect... Was this even challenged by defense counsel at the hearing? That is, whether there were... Defense counsel has no burden to ask the officers about the procedures. The burden is solely on the government to show that there are such procedures, and specifically in the desk appearance ticket context. And defense counsel did raise that and made those arguments to the court and fully preserved... But you say that they don't get a second chance, but that's exactly what we did in Griffith, didn't we? We sent it back to have the government show whether there was such a practice or procedure. Wasn't that what we did? That we said, as in this case, you are arguing that they haven't shown it, and so we sent it back for them to see if they showed it. Am I wrong? Your Honor, I apologize. Perhaps I can get back to you on rebuttal with respect to that question. But here, we have a situation where the government did present what they believed to be sufficient, I assume. It's not like they totally forgot about the issue or it wasn't pointed out to them that the inevitability of the search or the inventory would be an issue with respect to the suppression hearing. Moving backward in the chronology, where was the backpack when he was being handcuffed? What does the record show about where the backpack was when he was being handcuffed? At the moment he was being handcuffed, Your Honor? Yes, and then thereafter. Well, I believe it was taken off right before he was handcuffed, is my understanding, and put, quote, sort of away from him. It was taken off so he could not reach into it. That's why the officer took it off, and so he record about the exact distance between the backpack and Mr. Sobers. But here, the officers had no reason to think that Mr. Sobers presented any type of danger at all, and that is different than all of the cases cited by the government and by us, Blue, Hernandez, Shakir. Those cases all involve situations where officers are investigating serious felonies and have reason to believe the person is armed and dangerous. So there's no question about that part of the purpose of the search, and then the court looks to, is the place where the person, place where it is searched close enough that a person could have actually gotten to it? Here, there's no indication that it is. It's placed away from him so he cannot get into it. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the court, Erin Reed for the government. I represented the government at the suppression hearing in a trial in this case. Beginning with the search incident to arrest question, Your Honors, Judge Glasser was correct to find that the gun was lawfully recovered in this case pursuant to a search incident to arrest. Because the defendant's immediate control, which is the area from when... But are there any cases at all in which we have done that, of course has done that, where the crime was a trivial one? I mean, it's a crime, but it's a trivial one. One that doesn't suggest violence at all, where the person, back, put somewhere by his feet, and the person is handcuffed. Now, how reasonable is it that anybody would be frightened, think that there was danger from that? Which is what the essence of, you know, search incident to arrest. The more interesting thing to me is whether this was there. The issue is, it is the government's burden, and I don't know that they met it, but then we could send it back, as we did in Griffith, and say, is there a practice to look into these things? And if there is, then it would have been inevitable. Yes, Your Honor. Well, first, there are numerous cases that hold that the search incident to arrest is just a fact, that you're What makes you say that? You have another case where something was searched of this sort, where the crime was this trivial? I mean, the cases I've seen were all drug cases with people who are likely to be violent, and armed robbery cases. All the cases you cite are of that sort. I mean, you know, there are certain issues of privacy. If somebody is arrested because they get a traffic ticket, it's an arrest, but does that mean that you can search them? It does, Your Honor. Under the case law, including the King case, which the government relied on from the Supreme Court, all of the cases that analyze this do not go into whether, if a bag or an area is searched. They talk about all of the circumstances. All of the cases talk about all of the circumstances, how close it was, whether there were people. You know, they're highly fact-specific cases, and what I want to know is, what are the facts of this case that make it look like the cases that you said, okay? And I say, that's different from the issue of whether discovery was inevitable. Yes, it is, Your Honor, but starting with that issue, this case is very similar to Shakir. In that case, like this case, there was a bag that was next to the defendant's leg, and that is what the record established in this case. The testimony was clear from Detective Pashas. It's from A-28. He said the bag was next to the defendant's left leg at the time of the search. So, the police can take a backpack and put it by a person's feet so that they can search it, when they could have put it 10 feet further away and then not been able to search. I mean, that's a funny kind of way of doing business, isn't it? I mean, you know, what's going on in these cases is, frankly, that the exclusionary rule is a disaster, and it's a disaster because we always know the person is guilty, and so courts go out their way to try to find a way why it was okay. But if we left out the exclusionary rule for a moment, would anybody say that there was any danger to any policeman because of which a search of this sort would be impossible? And, Your Honor, in this case, on a narrow subway platform, when the subway could come by at any time, the defendant is standing up, and it's a public place, just like Shakir. The defendant could have, it was not impossible for him to reach down and get into the bag. And I understand the court's concern, but when you look at the cases, what's driving the analysis is not, is it likely that the defendant could get into the area of search, but is it possible? And in this case, it was. What about inevitable discovery? Is there evidence on the record of a procedure on inventory? Yes, there absolutely was. The testimony of both Detective would have been followed in this case, and that had an inventory search been done, it would not have been a ruse for the purpose of investigation. This is very similar to this court's ruling in Lopez, which held that not every detail of a search procedure has to be put in the record in order for the court to find that there was a standard policy. The policy doesn't have to be in writing. In this case, Detective Pashas testified that at the precinct, the entire contents of the inventory for either safekeeping or arrest evidence. And he said, why? He said, NYPD procedures, it's our policy. And Detective Soto said the same thing when he was asked about what happens at the precinct. He said, the very first thing that happens is that a prisoner is searched and his property is also searched. That's from A52. They're consistent. And that's the argument that perhaps he should have been given a desk appearance ticket instead of being arrested. Well, there's two responses to that, Your Honor. First of all, just like in cancel, in this case, it's very unlikely. In fact, there's no evidence to suggest that the defendant would have been given a desk appearance ticket. And I think that even though defense counsel on cross-examination, or on his direct of Detective Soto, attempted to get Detective Soto to say that, he didn't say that. And in this case, the defendant was... How do you distinguish the Griffith case from this on the question of the search and the practice and so forth? Because the same kind of evidence was there, and yet our court sent it back. Yes. In Griffith, the question was the search of a closed orange juice container within a bag. And there was no container. And in that case... How is... The pack is closed. So, just because this is a Russian doll in which there's a doll inside another doll inside another doll, I don't... I mean, is the first doll closed, would seem to me to be the question. I mean, I know... I knew that that was the difference, but is it a difference, a distinction that makes a difference? It does, Your Honor. It's obviously a more complicated question whether officers can open a closed juice container, as opposed to just zipping open a bag. My question is, again, is there a practice to open backpacks? The testimony is what they would open was about the same in Griffith. So, what's the big deal about sending it back and saying, tell us what the practice is? And if you come back with evidence that it is, then it would have been inevitable. Yes, Your Honor. Of course, this court could remand for that factual finding. I would submit that it's not necessary here. One additional fact is that, as Judge Glasser took notice of, there is an NYPD policy in the patrol guide. And it was appropriate for the court to take that into account, given that that was put into evidence one year before in the cancel case in 2016. That, in addition to the consistent testimony of these two officers about the policy, was sufficient under Lopez. And I just want to note that Lopez goes through all the things that aren't required in order to find that there's a standard policy. The policy doesn't have to be in writing, as I mentioned, but it also doesn't have to be comprehensive. It doesn't have to elicit every officer that does the search, who makes the decision, what parts of a car are searched first. In Lopez, the two officers had conflicting testimony. The first officer said that you inventory every single thing. The second one said only things of value. And even that, even though there was an inconsistency, unlike here, this court found that was enough. And in this case, on RFX, the standard was met. Thank you. Thank you. This is a rebuttal. First, Your Honors, with respect to any concern of danger, the officer's testimony was specifically that he had no concern of danger. So this isn't even about, is the officer's concern of danger reasonable? The officer had none. And that was reasonable under the circumstances here. And that's why it's different from the cases where both search instances to arrest have been allowed and not allowed, but danger is taken into account. The cases that the government mentions about where the scope or the purpose of the search isn't relevant are about searches of the person, not about searches of property that are removed from the person. And Arizona began to make clear that the scope must be related to the purpose. With respect to the inevitable discovery and inventory, in Griffith, there was no testimony about any sort of policy and procedure with respect to the closed container. Here, the government put in what they thought was sufficient, that the officer said there was a protocol and there was a procedure. So while this court, of course, can remand for further fact-finding, I don't believe the government thinks that's necessary, and nor do I. Why do you think that's not sufficient? He says they vouchered the backpack, they vouchered it for arrest evidence, the contents of the backpack were vouchered for NYPD procedures, it's our protocol. Why isn't that sufficient? That's with respect to their procedures when a gun is found and a person is being processed for formal arrest. That's not with respect to when a gun is not found, and the officer testifies that most of the time, people even with transit recidivist status qualify for the desk appearance ticket. This isn't enough, and it's not like Lopez where there was extensive testimony about what the procedures were. The issue was down in the nitty-gritty of did this procedure actually follow the precise contours of an inventory search. Here, we don't have that. All right, thank you. Thank you. We'll reserve decision.